IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOSEPH W. DIEKEMPER and | ) | Bankruptcy Case No. 04-32094 |
| MARGARET A. DIEKEMPER, | ) | |
| | ) | |
| Debtors. | ) | |
| | | |
| CENTRUE BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary Case No. 06-3181 |
| | ) | |
| JOSEPH W. DIEKEMPER and | ) | |
| MARGARET A. DIEKEMPER, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

This matter having come before the Court for trial on an Objection to Discharge filed by Plaintiff, Centrue Bank; the Court, having heard sworn testimony and arguments of counsel and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Findings of Fact

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157 and 11 U.S.C. §§ 1141 and 727,    in that it arises in and relates to the denial of the discharge of the Debtors in the above-captioned Chapter 11 bankruptcy proceeding. This is a core proceeding, as defined by 28 U.S.C. § 157(b)(2)(J).

On May 21, 2004, the Debtors/Defendants, Joseph W. Diekemper and Margaret A. Diekemper, filed for relief under Chapter 11 of the Bankruptcy Code. On December 20, 2006, Debtors/Defendants' case was converted to a case under Chapter 7, at their request. The Plaintiff, Centrue Bank, is a creditor of the Debtors/Defendants, holding a first lien on all real estate and a blanket lien on all farm assets, including farm machinery, growing crops,

stored grain, feed, cows and offspring, government program payments, patronage, and other assets as more fully set forth in the Security Agreement entered into between the parties.

At trial on the Objection to Discharge, both Defendants testified. Given the demeanor of the Defendants, the content of their testimony, and how their testimony related to other witnesses and documentary evidence in this case, the Court finds that neither Defendant was a credible witness. In fact, the Defendants' testimony at trial displayed a reckless and cavalier disregard for the truth.

Under Count I of the Plaintiff's Objection to Discharge, the Plaintiff seeks to bar the Debtors/Defendants' discharge pursuant to the provisions of 11 U.S.C. § 727(a)(2)(A). A discharge provided by the Bankruptcy Code is to effectuate the "fresh start" goal of bankruptcy relief. In exchange for that fresh start, the Bankruptcy Code requires debtors to accurately and truthfully present themselves before the Court. A discharge is only for the honest debtor. In re Garman, 643 F.2d 1252 (7th Cir. 1980), *cert denied* 450 U.S. 910, 101 S.Ct. 1347 (1981). However, objections to discharge under 11 U.S.C. § 727 should be liberally construed in favor of debtors and strictly construed against objectors in order to grant debtors a fresh start. In re Johnson, 98 B.R. 359 (Bankr. N.D. Ill. 1988). The burden of proof is upon the Plaintiff to establish the elements of 11 U.S.C. § 727(a)(2)(A), by a preponderance of the evidence. Grogan v. Garner, 111 S.Ct. 654 (1991). The Court must find that the Defendants acted with actual intent regarding a showing of extrinsic evidence suggesting that fraud exists. In re Smiley, 864 F.2d 562 (7th Cir. 1989). In the case of In re Prathipati, 2004 WL 3127485 (Bankr. C.D. Ill. 2004), this Court discussed the matter of intent citing existing case law as follows:

> . . . ("a debtor is unlikely to directly testify that his intent was fraudulent, the court may deduce fraudulent intent from all the facts and circumstances of a case"). "Thus, where the evidence on the intent question is such that two permissible conclusions may rationally be drawn, the bankruptcy court's choice between them will not be viewed as clearly erroneous." Krehl, supra, 86 F.3d at 744 (citation omitted). "Intent to defraud involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." In re Chavin, 150 F.3d 726, 728 (7th Cir. 1998) (citations omitted).

Pursuant to 11 U.S.C. § 727(a)(2)(A), a debtor must be denied a discharge where it is found that the debtor (1) within one year before the date of filing bankruptcy (2) with intent to hinder, delay, or defraud a creditor or officer of the estate has (3) transferred, removed, destroyed, mutilated, or concealed property of the debtor.  In examining this case under the elements of § 727(a)(2)(A), the Court finds that the Plaintiff has proven, by a preponderance of the evidence, all necessary elements.  Under § 727(a)(2)(A), the Court takes judicial notice of Adversary Case No. 06-3009, Robert Eggmann, Trustee of the Bankruptcy Estate of Joseph and Margaret Diekemper, vs. Marvin Kampwerth, to recover preferential payment in excess of interest Debtors/Defendants paid to Marvin Kampwerth, which Plaintiff, Robert Eggmann, has indicated was settled for a substantial sum of money. The settlement in this adversary proceeding evidences the fact that the Debtors/Defendants transferred substantial assets within the year preceding their bankruptcy filing with the intent to hinder, delay, and defraud other creditors.

Pursuant to 11 U.S.C. § 727(a)(2)(B):

(a)     The court shall grant the debtor a discharge, unless - . . .

(2)     the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed - . . .

(B)     property of the estate, after the date of the filing of the petition;

Plaintiff also has the burden of proving the elements under § 727(a)(2)(B), by a preponderance of the evidence.  See:  Grogan v. Garner, supra, at 654.

Under § 727(a)(2)(B), Plaintiff has shown by a preponderance of the evidence that the Defendants, without fair consideration and with an intent to hinder, delay, and defraud Plaintiff, other creditors, the Office of the U. S. Trustee or an officer of the estate charged with custody of property under this title, have transferred, removed, destroyed, mutilated, or concealed property of the estate, after the date of the filing of the petition, more fully described as follows:

3

    (a)    over $200,000 in cash withdrawn from Debtor-in-Possession account from May 27, 2004, through November 23, 2005, as follows:

| | |
|---|---|
| May 27, 2004 | $ 30,000.00 |
| June 18, 2004 | $ 40,000.00 |
| June 29, 2004 | $ 25,000.00 |
| July 20, 2004 | $ 12,000.00 |
| July 27, 2004 | $ 18,000.00 |
| September 1, 2004 | $ 1,000.00 |
| September 2, 2004 | $ 8,000.00 |
| September 20, 2004 | $ 2,500.00 |
| October 22, 2004 | $ 5,000.00 |
| October 29, 2004 | $ 10,000.00 |
| November 19, 2004 | $ 20,000.00 |
| December 24, 2004 | $ 10,000.00 |
| March 23, 2005 | $ 1,253.61 |
| March 25, 2005 | $ 6,521.21 |
| April 2, 2005 | $ 2,000.00 |
| November 15, 2005 | $ 6,000.00 |
| November 23, 2005 | $ 12,000.00 |
| | |
| Total | $209,274.82 |

    (b)    hiding farm equipment subject to Centrue Bank's lien; and,

    (c)    entering into a fraudulent scheme with Marvin Kampwerth to borrow $100,000 in cash from Marvin Kampwerth between June 13, 2004, and August 8, 2004, and paying Marvin Kampwerth $6,000 on November 27, 2004, Check No. 1123, for his participation in the scheme.

Pursuant to § 727(a)(3), of the Bankruptcy Code:

    (a)    The court shall grant the debtor a discharge, unless - . . .

    (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

Section 727(a)(3) places an affirmative duty on the debtors to create books and records accurately documenting their business affairs. In re Juzwiak, 89 F.3d 524 (7th Cir. 1996). To prevail under its complaint, plaintiff must prove that debtor failed to keep adequate records. In re Connors, 273 B.R. 764 (Bankr. S.D. Ill. 2001) *aff'd. on appeal* at 283 F.3d 896 (7th Cir. 2002). Intent is not an element of proof under § 727(a)(3), Juzwiak, supra,

at 430.  The creditors and the trustee are not required to accept a debtor's oral recitations or recollections of his transactions.  Rather, to qualify for discharge in bankruptcy, a debtor is required to keep and produce written documentation of all such transactions.  Juzwiak, supra, at 429-430.  Creditors are not required to sift through documents and attempt to reconstruct the flow of debtor's assets.  The burden is upon the debtor to organize and to accurately reconstruct debtor's business affairs.

Under § 727(a)(3), the Plaintiff has shown by a preponderance of the evidence that the Debtors/Defendants have concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and papers, from which the Debtors/Defendants' financial condition or business transactions might be ascertained. Debtors/Defendants failed to produce records to the Plaintiff and the Court which provided enough information to ascertain Debtors/Defendants' financial condition and track the Debtors/Defendants' financial dealings with substantial completeness and accuracy while Debtors/Defendants were in a previous Chapter 12, and subsequent Chapter 11 case, from May 21, 2004, through December 20, 2006.  The Debtors/Defendants' submission of a hodgepodge of receipts at trial was insufficient to meet their duty to create books and records, which accurately document Debtors/Defendants' business affairs.  Records of substantial completeness and accuracy are necessary in order that creditors may verify the information recorded.  The Debtors/Defendants testified that over $200,000 in cash they withdrew from their DIP account was used to pay bills in cash.  This Court finds Debtors/Defendants' testimony is not credible. Joseph W. Diekemper testified that $100,000 in cash borrowed from Marvin Kampwerth, between June 13, 204, and August 8, 2004, was used to pay bills in cash.  This Court finds Joseph W. Diekemper's testimony is not credible.

The Court finds, upon testimony of Debtors/Defendants and their accountant, that the bank statements and the Monthly Reports submitted to the Court by Debtors/Defendants do not accurately document Debtors/Defendants' business affairs.  The Monthly Reports filed

by Debtors/Defendants, while in Chapter 11, failed to accurately account for their financial transactions and condition from May 21, 2004, through December 20, 2006.

No record existed as to purpose or terms of several loans that were deposited into the Debtor-in-Possession checking account and reported on Monthly Reports, as follows:

| | | |
|---|---|---|
| July/Aug. 2005 | Loan in Cash | $ 5,000 |
| Aug./Sept. 2005 | Marvin | 3,000 |
| Oct./Nov. 2005 | Cash | 300 |
| Nov./Dec. 2005 | Cash from Savings | 20,000 |
| Dec. 2005/Jan. 2006 | Other Deposits | 7,500 |

Joseph W. Diekemper had no explanation for the $13,000 of Other Receipts with the name Marvin on page 33 or the Monthly Report for August 2004. (Plaintiff's Exhibit 40, page 24), other than to say he knew it was not borrowed from Marvin Kampwerth, but may have been from another Marvin. Joseph W. Diekemper had no explanation for the entry, "Marvin Kampwerth - $10,000" of "Expenses Charged But Not Paid During Month of August, 2004," other than to say he must have put it on the wrong line. (Plaintiff's Exhibit 40, page 20). Joseph W. Diekemper could not explain the differences in the alleged loans from Marvin Kampwerth as reported by Debtors/Defendants on the Monthly Reports (Plaintiff's Exhibit 40), the DIP bank statements (Plaintiff's Exhibit 39), and the Marvin Kampwerth Loan Ledger (Plaintiff's Exhibit 30, page 54) prepared by Debtors/Defendants' accountant, as follows:

| WORKSHEET | | MONTHLY REPORT | | BANK STATEMENT | |
|---|---|---|---|---|---|
| 6/13/04 | $50,000 | May, 2004 | $20,000 | no large deposit | |
| 6/23/04 | $20,000 | June, 2004 | $40,000 | 6/14/04 | $20,000 |
| 7/1/04 | $10,000 | July, 2004 | $40,000 | 7/14/04 | $ 8,000 |
| 7/15/04 | $10,000 | | | 7/29/04 | $ 3,000 |
| 8/4/04 | $ 6,000 | | | | |
| 8/8/04 | $ 4,000 | | | | |

Joseph W. Diekemper testified that he had obtained a $100,000 loan from Marvin Kampwerth which was used to pay bills. However, Debtors/Defendants' bank statements and Chapter 11 Monthly Reports do not reflect Debtors/Defendants' receipt of the funds from Kampwerth. Moreover, there are insufficient records to substantiate Joseph W. Diekemper's testimony that there was a loan and that the funds were spent by making "cash" payment to

creditors and employees.  Debtors/Defendants failed to keep records of disbursement and expenditures of the proceeds from the alleged loan from Marvin Kampwerth and failed to keep accurate records of payments to Marvin Kampwerth.  Joseph W. Diekemper testified that, while in Chapter 11, Debtors/Defendants maintained a second checking account at First National Bank, in addition to their Debtor-in-Possession checking account at US Bank. Joseph W. Diekemper acknowledged having a telephone conversation with a staff member from the U. S. Trustee's Office after filing for relief under Chapter 11, but indicated he "did not pay much attention to it."  Debtors/Defendants admitted taking over $200,000 in cash from their DIP checking account, borrowing $100,000 cash, and failing to transact all business through their Debtor-in-Possession checking account from May 21, 2004, through December 20, 2006.

The Court finds Debtors/Defendants' testimony was not credible in attempting to explain how over $200,000 in cash, taken out of the Debtor-in-Possession checking account, was spent.  The records produced by Debtors/Defendants were wholly inadequate to satisfactorily explain their financial transactions from May 21, 2004, through December 20, 2006.  Debtors/Defendants failed to provide adequate records from which their financial condition and business transactions could be ascertained.  The Diekempers were involved in complex financial business, managing a dairy farm valued in excess of $5,000,000.  The Debtors/Defendants failed to produce adequate records to explain the disposition of hundreds of thousands of dollars Debtors/Defendants withdrew in cash from their DIP checking account and allegedly borrowed in cash during their personal bankruptcy.

Pursuant to 11 U.S.C. § 727(a)(4)(A):

(a)     The court shall grant the debtor a discharge, unless - . . .

(4)     the debtor knowingly and fraudulently, in or in connection with the case -

(A)     made a false oath or account;

The purpose of § 727(a)(4)(A) is to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have an interest in the administration

of the estate.  In re Carlson, 231 B.R. 640 (Bankr. N.D. Ill. 1999), *aff'd.* at 250 B.R. 366 (Bankr. N.D. Ill. 2000), *aff'd.* at 263 F.3d 748 (7th Cir. 2001).

In order to prevail under § 727(a)(4)(A), a plaintiff must prove by a preponderance of the evidence that (1) debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case.  In re Sholdra, 249 F.3d 380 (5th Cir. 2001); In re Bailey, 147 B.R. 157 (Bankr. N.D. Ill. 1992).  It is well established that the test for materiality of the subject matter of a false oath is whether it "bears a relationship to the bankrupt's business, transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."  See: In re Bailey, supra, at 162.

The Debtors/Defendants knowingly and fraudulently, in connection with this case, made a false oath to this Court in the Motions for Authority to Incur Debt, filed June 13, 2004, and December 6, 2004, as follows:  "Debtors do not have unencumbered funds as required to meet their necessary expenses, . . ."  The Debtors/Defendants knowingly and fraudulently, in connection with this case, gave false testimony at the § 341 meeting conducted by Robert Eggmann, on March 9, 2007.  The Debtors/Defendants knowingly and fraudulently, in connection with this case, filed false accountings on the Monthly Reports to the Court and the U. S. Trustee's Office, as follows:

(a)    falsified Monthly Report for May 2004, failing to account for a $30,000 cash withdrawal;

(b)    falsified Monthly Report for June 2004, failing to account for $65,000 cash withdrawals;

(c)    falsified Monthly Report for July 2004, failing to account for $30,000 cash withdrawals;

8

(d)     failed to file a Monthly Report for the period from September 1, 2004, through October 4, 2004, during which period Debtors/Defendants made unexplained cash withdrawals of $11,500;

(e)     falsified Monthly Report for October 2004, failing to account for $15,000 cash withdrawals;

(f)     falsified Monthly Report for November 2004, failing to account for $20,000 cash withdrawal;

(g)     falsified Monthly Report for December 2004, failing to account for $10,000 cash withdrawal;

(h)     falsified Monthly Report for April 2005, failing to account for $2,000 cash withdrawal;

(i)     falsified Monthly Report for November 2005, failing to account for $12,000 cash withdrawal.

During testimony at trial, Debtors/Defendants admitted signing an Agricultural Financial Statement, on September 22, 2003, containing the following statement above their signature:

> Applicant(s) are aware that any knowing or willful false statements regarding the value of the above property for purposes of influencing the actions of Lender can be a violation of federal law . . . and may result in a fine or imprisonment or both.

The September 22, 2003, Agricultural Financial Statement signed by Debtors/Defendants and given to Plaintiff placed a value of $3,244,500 on their farm real estate just 8 months prior to filing for relief under Chapter 11 of the U. S. Bankruptcy Code.  Joseph W. Diekemper's testimony regarding financial statements given to Plaintiff (Plaintiff's Exhibit 25) indicated Joseph W. Diekemper previously valued his real estate at $3,565,299 on his April 26, 2002, financial statement, $3,332,000 on his March 6, 2001, financial statement, and $3,011,600 on his April 12, 2000, financial statement.  The real estate values on the previous three financial statements signed by Joseph W. Diekemper are consistent with the $3,244,500 real estate value on Debtors/Defendants' September 23, 2003, financial statement

to Plaintiff.  On Debtors/Defendants' bankruptcy petition, they valued their real estate, on Schedule A, at $1,116,000 as of May 21, 2004.  Both Debtors/Defendants acknowledged signing their bankruptcy petition and schedules under the pains and penalties of perjury. Debtors/Defendants' Schedule A value of $1,116,000, a reduction of $2,000,000 in the value of real estate just 8 months after Debtors/Defendants' last financial statement to Plaintiff, is not an innocent mistake, but a purposeful false oath.

Joseph W. Diekemper's further testimony regarding financial statements given to Plaintiff (Plaintiff's Exhibit 25) indicated Debtors/Defendants signed a September 23, 2003, Agricultural Financial Statement which placed a value of $983,700 on non-titled machinery and equipment.  The previous three financial statements signed by Joseph W. Diekemper place the following values on farm machinery:  $1,308,100 on 4/26/02; $1,023,500 on 3/6/01, and $1,011,500 on 4/12/00.  On Debtors/Defendants' bankruptcy petition, they valued their farm machinery on Schedule B at $352,250, as of May 21, 2004.  Both Debtors/Defendants' acknowledged signing their bankruptcy petition and schedules under the pains and penalties of perjury.  Debtors/Defendants' Schedule B value of $352,250, a reduction of $600,000 in the value of machinery just 8 months after Debtors/Defendants' last financial statement, is not an innocent mistake, but a purposeful false oath.

Both Debtors/Defendants gave no explanation for the false oath on their bankruptcy petition in valuation of their assets.  Debtors/Defendants' undervaluing of assets constitutes a "false oath," warranting a denial of their discharge.  The evidence clearly establishes all elements of § 727(a)(4)(A).

In conclusion, the Court finds that overwhelming evidence has been presented to deny discharge to the Debtors/Defendants, Joseph W. Diekemper and Margaret A. Diekemper, under each of the enumerated sub-sections of 11 U.S.C. § 727.  The Debtors/Defendants have utterly failed to act in a forthright, honest manner in their dealings with their creditors and this Court, and, as such, they are not entitled to a "fresh start" under Chapter 7 of the Bankruptcy Code.

Entered:        October  26 , 2007.


                                    /s/Gerald D. Fines
                                    GERALD D. FINES
                                    United States Bankruptcy Judge